IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| KA'MAURI BATES, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. GLR-26-285 |
| A. COADY, et al., | * | |
| Defendants. | * | |

***

**MEMORANDUM OPINION**

THIS MATTER is before the Court on Defendants Officer A. Coady and City of Frederick, Maryland's (together, "Defendants") Motion to Dismiss or for Summary Judgment, (ECF No. 14), and self-represented Plaintiff Ka'Mauri Bates's Motion for Leave to File a Proposed Surreply (ECF No. 28).[1] The Motions are ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2025). For the reasons set forth below, the Court will grant Bates's Motion for Leave to File a Proposed Surreply and Defendants' Motion to Dismiss. The Court will deny as moot Bates's Motion to Appear by Video and Motion to Preserve Evidence.

[1] Also pending is self-represented Plaintiff Ka'Mauri Bates's Motion to Appear by Video (ECF No. 17), and Motion to Preserve Evidence and Notice of Prior Certified Requests (ECF No. 23).

# I. BACKGROUND

## A. Factual Background[2]

On June 24, 2025, Plaintiff Ka'Mauri Bates was walking to a store near her residence in Frederick, Maryland (the "City"), when she was struck by a car as she "lawfully cross[ed] a marked crosswalk near the intersection of Rosemont Avenue and Tuscany Drive." (Am. Compl. ¶¶ 7, 26, ECF No. 16). Susanne Poole, a non-party to this lawsuit, was driving the car that struck Bates. (Id. ¶¶ 7–8). According to Bates, Poole "had just turned from Rosemont Avenue onto Tuscany Drive immediately" before her car struck Bates. (Id. ¶ 15). The impact from the collision resulted in a cracked windshield and rendered Bates unconscious. (Id. ¶ 9).

After the collision, "[m]ultiple pedestrians stopped" and administered aid to Bates, (id. ¶ 10), and "several police officers responded to the scene," (id. ¶ 11). One of the responding officers, A. Coady ("Officer Coady") "prepared the official police report" about the collision without taking a statement from either Bates, who remained unconscious at the time, (id. ¶¶ 12–13), or from other witnesses who were present at the scene and had rendered aid to Bates, (id. ¶¶ 13, 23). Instead, Officer Coady "relied primarily on" Poole's statement in preparing the post-collision police report. (Id. ¶¶ 14, 12).

Officer Coady also spoke to Bates's mother, who had arrived at the scene, "in an aggressive and confrontational manner," "repeatedly" asking her "[w]hat was [Bates]

[2] Unless otherwise noted, the Court takes the following facts from the Amended Complaint (ECF No. 16) and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

doing out here?" (Id. ¶¶ 24–25). According to Bates, Officer Coady's "questioning suggested that [Bates] should not have been present in the area and implied fault based solely on [Bates's] presence on the street." (Id. ¶ 27). Bates's mother also interpreted Officer Coady's "tone and repeated questioning as hostile and accusatory[,] rather than investigative." (Id. ¶ 28). Bates asserts that Officer Coady's tone and statements to her mother "further demonstrate that" he "approached the situation with bias . . . ." (Id. ¶ 29).

Bates alleges that Officer Coady "attributed fault to" Bates in the post-collision police report "despite evidence that" Bates "was struck in a marked crosswalk," (id. ¶ 16); "documented the weather as 'cloudy' . . . even though historical weather records confirm that the conditions were clear and sunny," (id. ¶ 17); and "omitted important information, including statements from" Bates and the "witnesses who [had] assisted [Bates]" after the collision, (id. ¶ 30). According to Bates, the responding officers, including Officer Coady, did not issue a citation to Poole or otherwise "meaningfully investigate[]" the incident even though Poole had struck a pedestrian on a marked crosswalk. (Id. ¶ 19). Bates argues that "[p]edestrian collisions occurring in marked crosswalks present a significant risk of serious injury and require a careful investigation by responding officers," (id. ¶ 20), including "interviewing available witnesses, documenting the position of the pedestrian and vehicle, and evaluating whether the driver failed to yield the right-of-way," (id. ¶ 21). According to Bates, "[d]espite these responsibilities," Officer Coady's failure "to conduct a thorough and impartial investigation of the collision," (id. ¶ 22), resulted in an "inaccurate" police report that attributed fault to Bates and interfered with Bates's "ability to obtain legal

representation" to pursue legal claims and "compensation for [the] injuries [she] sustained in the collision," (id. ¶ 33).

## B. Procedural Background

On January 22, 2026, Bates filed a Complaint against Officer Coady and the Frederick Police Department ("FPD"). (ECF No. 1). On April 14, 2026, Officer Coady and the FPD filed the instant Motion to Dismiss or for Summary Judgment. (ECF No. 14). The next day, Bates filed an Amended Complaint, substituting the City for the FPD. (Am. Compl. ¶ 6). Subsequently, the Clerk terminated the FPD as a party from the lawsuit. Bates's Amended Complaint brings two 42 U.S.C. § 1983 claims against Officer Coady for violation of the Equal Protection Clause and denial of access to courts (Counts I and II), and a claim of municipal liability against the City (Count III). (Id. at 6–7).[3] Bates seeks compensatory and punitive damages, as well as attorneys' costs and fees. (Id. at 8–9). Defendants assert the previous Motion to Dismiss or for Summary Judgment against Bates's Amended Complaint. (ECF No. 27). On April 22, 2026, Bates opposed Defendants' Motion, (ECF No. 18) and Defendants filed their Reply on June 8, 2026, incorporating the arguments in their original Motion to apply to the newly substituted Defendant, the City, (Defs.' Reply Pl.'s Opp'n Defs.' Mot. Dismiss or Summ. J. ["Reply"] at 3, ECF No. 20). On August 25, 2026, Bates filed a Motion for Leave to File a Proposed Surreply (ECF No. 28).[4]

---

[3] Unless otherwise noted, citations to page numbers refer to the pagination assigned by the Court's Case Management/Electronic Case Files ("CM/ECF") system.

[4] Though surreplies generally are not permitted, see Local Rule 105.2(a) (D.Md. 2025), the Court in its discretion may allow a party to file a surreply, EEOC v. Freeman,

## II. DISCUSSION

### A. Standards of Review

#### 1. Conversion

Defendants' Motion, styled as a motion to dismiss or, alternatively, for summary judgment, implicates the Court's discretion to determine which standard applies. Roswell v. Mayor & City Council of Balt., 671 F.Supp.3d 607, 623 (D.Md. 2023), aff'd, No. 23-1567, 2023 WL 8728503 (4th Cir. Dec. 19, 2023). The Court may treat the Motion solely as one to dismiss, in which case the Court may consider only the Amended Complaint and any attached documents that are "integral to the [Amended C]omplaint." Id. (quoting Sec'y of State for Def. v. Trimble Navigation Ltd., 484 F.3d 700, 705 (4th Cir. 2007)); see also Netro v. Greater Balt. Med. Ctr. Inc., No. GLR-16-3769, 2017 WL 5635446, at *1 (D.Md. Apr. 13, 2017) (citing Fed.R.Civ.P. 12(d)), aff'd, 891 F.3d 522 (4th Cir. 2018). Because the Court can resolve the Motion without considering any extra-pleading material, the Court will construe the instant Motion as a motion to dismiss.

#### 2. Rule 12(b)(6)

The purpose of a Rule 12(b)(6) motion is to "test[] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of

---

961 F.Supp.2d 783, 801 (D.Md. 2013), aff'd in part, 778 F.3d 463 (4th Cir. 2015). Here, Bates's Proposed Surreply largely focuses on the service-related developments in the case after she filed her Opposition to the Defendants' Motion, (see Proposed Surreply at 2, 3–5, ECF No. 28-1), addresses Defendants' August 18, 2026 Status Report, (see id. at 6–12), and restates her § 1983 and municipal liability claims, (see id. at 7–9). Because the Court finds that the arguments contained in Bates's Surreply do not change the outcome of its analysis and Defendants will not be unduly prejudiced by them, the Court will grant Bates's Motion for Leave to File a Proposed Surreply and will consider her Surreply in its analysis.

defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, accept the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. See Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cnty., 407 F.3d 266, 268 (4th Cir. 2005). But the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters of Norfolk v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

Self-represented plaintiffs' pleadings are liberally construed and held to a less stringent standard than pleadings drafted by lawyers. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)); accord Brown v. N.C. Dep't of Corr., 612 F.3d 720, 722 (4th Cir. 2010). Although complaints filed by self-represented plaintiffs are entitled to special care to determine whether any possible set of facts would entitle the plaintiff to relief, Hughes v. Row, 449 U.S. 5, 9–10 (1980), such complaints must nonetheless be dismissed if they do not allege "a plausible claim for relief," Forquer v. Schlee, No. RDB-12-969, 2012 WL 6087491, at *3 (D.Md. Dec. 4, 2012) (quoting Iqbal, 556 U.S. at 679).

**B. Analysis**

Defendants contend that Bates's Amended Complaint should be dismissed because (1) she has failed to serve Defendants, and (2) she has failed to plead sufficient facts upon which relief can be granted as to her § 1983 and municipal liability claims. (Mem. L. Supp. Mot. Dismiss or Summ. J. ["Mot. Dismiss"] at 9–12, 15–19, ECF No. 14-2). Because the Court finds that the facts, as alleged in Bates's Amended Complaint, fail to state a § 1983 and municipal liability claim, it will grant Defendants' Motion on the merits without analyzing their service claims.

**1. Count I – § 1983 Equal Protection**

Defendants argue that Bates's § 1983 Equal Protection claim against Officer Coady is deficient because she does not allege discrimination based on a protected class, asserts only conclusory statements that Officer Coady treated her "differently from" Poole, and

does not put forth any facts identifying a similarly situated comparator.[5] (Reply at 10). The Court agrees.

To state a claim under § 1983, a plaintiff must allege that "(1) a right secured by the Constitution or laws of the United States was violated, and (2) the alleged violation was committed by a 'person acting under the color of state law.'" Kelly v. Miller, No. ELH-20-2531, 2022 WL 2703827, at *18 (D.Md. July 12, 2022) (quoting West v. Atkins, 487 U.S. 42, 48 (1988)). The Fourteenth Amendment's Equal Protection Clause prohibits states from denying "any persons within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. "In order to survive a motion to dismiss an equal protection claim, a plaintiff must plead sufficient facts to demonstrate plausibly that [she] was treated differently from others who were similarly situated and that the unequal treatment was the result of discriminatory animus." Equity in Athletics v. Dep't of Educ., 639 F.3d 91, 108 (4th Cir. 2011).

This pleading standard requires the plaintiff to "identify similarly situated comparators." Williams v. Mitchell, 682 F.Supp.3d 503, 517 (E.D.Va. 2023) (explaining that plaintiff's allegation that defendants treated him "differently from others similarly situated . . . by intentionally misrepresenting facts on the accident report" was conclusory because plaintiff failed to identify any similarly situated comparators), rev'd in part,

[5] Defendants also argue that even if Bates has sufficiently stated a § 1983 claim against Officer Coady, her Amended Complaint should be dismissed because Officer Coady is entitled to qualified immunity. (Defs.' Reply Pl.'s Opp'n Defs.' Mot. Dismiss or Summ. J. at 10–11, ECF No. 20). Because the Court finds that Bates has failed to allege a § 1983 Equal Protection claim against Officer Coady, it declines to reach the issue of qualified immunity.

vacated in part on other grounds, 122 F.4th 85 (4th Cir. 2024); Webb v. Kline, No. JMC-22-00008, 2022 WL 3700874, at *4 (D.Md. Aug. 26, 2022) (concluding that plaintiff's failure to plead facts regarding similarly situated comparators rendered his allegations of equal protection violation conclusory), aff'd, No. 22-1922, 2023 WL 3581694 (4th Cir. May 22, 2023).

Bates's Amended Complaint falls far short of this pleading standard because it does not identify any comparator or allege any facts from which this Court may evaluate whether the comparator is similarly situated to Bates. See Williams, 682 F.Supp.3d at 517. In fact, the Amended Complaint does not use the words "similarly situated" or "comparator" even once. Instead, it contains only bald assertions that Officer Coady "treated [Bates] differently from" Poole when he primarily relied on Poole's statement in preparing the police report that attributed fault to Bates "without conducting a fair and impartial investigation" and failed to obtain and include statements from Bates or other witnesses to the collision. (Am. Compl. ¶¶ 40–41).[6] Even construing these factual allegations liberally and taking into account Bates's self-represented status, the Court finds that the allegations are insufficient to state a claim "that is plausible on its face." Twombly, 550 U.S. at 570.

To the extent Bates alleges that Poole is a similarly situated comparator, that allegation is also implausible because Bates has not (1) identified Poole as a similarly

---

[6] That Bates was unconscious for at least part of the encounter with Officer Coady, (see Am. Compl. ¶ 9, ECF No. 16), further undermines the plausibility of her allegations regarding Officer Coady's investigation of the collision, particularly because the Amended Complaint is also silent as to what point during the investigation, if at all, Bates regained consciousness.

situated comparator, or (2) presented any facts demonstrating how Poole—the driver of the car—is similarly situated to Bates, the alleged accident victim.

That Bates appears to be alleging a class-of-one equal protection discrimination claim also does not shield her Amended Complaint from dismissal. Where—as here—a plaintiff's "equal protection claim does not allege discrimination based on race, gender, or another recognized 'class,'" it can be "interpreted as alleging that the discrimination was against a 'class-of-one.'" Williams, 682 F.Supp.3d at 517 (quoting Willis v. Town of Marshall, 426 F.3d 251, 263 (4th Cir. 2005)).

Prior to the Supreme Court's decision in Iqbal, plaintiffs alleging a class-of-one discrimination claim could survive a motion to dismiss "even without" identifying "others similarly situated." See, e.g., DeMuria v. Hawkes, 328 F.3d 704, 706 (2d Cir. 2003). Post-Iqbal, the United States Court of Appeals for the Fourth Circuit has yet to provide "a clear standard as to how concretely and specifically a plaintiff must compare [her]self to others to state a class-of-one claim." See Williams, 682 F.Supp.3d at 517. The majority of other circuits that have considered the issue post-Iqbal, however, have explicitly held that plaintiffs alleging a class-of-one claim must identify a similarly situated comparator in their complaint, see, e.g., McCoy v. Town of Pittsfield, 59 F.4th 497, 508 (1st Cir. 2023), Ruston v. Town Bd. for Town of Skaneateles, 610 F.3d 55, 58–59 (2d Cir. 2010); 1201 W. Girard Ave., LLC v. Clarke, No. 23-3194, 2024 WL 4403866, at *2 (3d Cir. Oct. 4, 2024); Robbins v. Becker, 794 F.3d 988, 995–97 (8th Cir. 2015); SmileDirectClub, LLC v. Tippins, 31 F.4th 1110, 1122–23 (9th Cir. 2022); Kansas Penn Gaming, LLC v. Collins, 656 F.3d 1210, 1220–21 (10th Cir. 2011); Leib v. Hillsborough Cnty. Pub. Transp.

Comm'n, 558 F.3d 1301, 1306–07 (11th Cir. 2009),[7] and the district courts in this circuit appear to agree, see, e.g., B.R. v. F.C.S.B., No. 119CV917RDAWEF, 2023 WL 2464975, at *2 (E.D.Va. Mar. 10, 2023) ("[P]leading a 'class of one' claim does not excuse Plaintiff from the requirement that she allege 'that she has been intentionally treated differently from others similarly situated.'" (quoting Siena Corp v. Mayor and City Council of Rockville, 873 F.3d 456, 465 (4th Cir. 2017))); Rothrock v. City of Georgetown, No. 2:19-CV-2227-RMG, 2022 WL 903366, at *7 (D.S.C. Mar. 28, 2022); Foster v. United States Env't Prot. Agency, No. 2:14-CV-16744, 2016 WL 4473453, at *7 (S.D.W. Va. Aug. 22, 2016).

Thus, Bates's failure to allege differential treatment from a similarly situated comparator does not cure the deficiencies in her Amended Complaint in a post-Iqbal world. Accordingly, the Court will grant Defendants' Motion as to Count I.

**2. Count II – § 1983 Denial of Access to the Courts**

Next, Bates brings a denial of access to the courts claim, alleging that Officer Coady "prepared and maintained a police report containing inaccurate or incomplete information" that "attributed fault to [Bates] and omitted important evidence related to the collision." (Am. Compl. ¶¶ 45–46). This, according to Bates, made it difficult for her to obtain "legal representation" to pursue "legal claims arising from the" collision, (id. ¶ 47), and "interfered with" her "constitutional right of meaningful access to the courts," (id. ¶ 48).

[7] But see Miller v. City of Montana, 784 F.3d 1113, 1120 (7th Cir. 2015) ("[W]e have repeatedly confirmed that '[p]laintiffs alleging class-of-one equal protection claims do not need to identify specific examples of similarly situated persons in their complaints.'" (quoting Capra v. Cook Cnty. Bd. of Rev., 733 F.3d 705, 717 (7th Cir. 2013))).

Defendants respond that Bates's claim must be dismissed because (1) she has failed to plead a "nonfrivolous" or "arguable" underlying claim that she lost because of the purportedly inaccurate police report, and (2) her alleged injury—difficulty in obtaining counsel—is only "speculative and indirect." (Reply at 6). For the reasons explained below, the Court agrees with Defendants.

"It is well established that citizens have a right of access to the courts." Pollard v. Pollard, 325 F.App'x 270, 272 (4th Cir. 2009) (citing Christopher v. Harbury, 536 U.S. 403, 415 (2002)). Access claims can be of two types: forward-looking and backward-looking. Christopher, 536 U.S. at 413. To prevail on a forward-looking access claim, the plaintiff must allege that "systemic official action frustrates" her ability to "prepare[] and file[] suits at the present time." Id. In contrast, a plaintiff bringing a backward-looking access claim "must establish (1) that [she] lost the opportunity to pursue a '"nonfrivolous," "arguable"' underlying claim, (2) 'the official acts frustrating the litigation;' and (3) that the relief [she] seeks is 'unobtainable in other suits.'" Murdock v. Thompson, No. 20-6278, 2022 WL 17352171, at *4 (4th Cir. Dec. 1, 2022) (quoting Christopher, 536 U.S. at 414–16). In lawsuits with backward-looking access claims, "a plaintiff . . . may state a claim by establishing that a public official's actions in covering-up evidence hindered the plaintiff's efforts to vindicate a legal right." Huneycutt v. Chernyak, No. 0:22-CV-1532-BHH-PJG, 2024 WL 2932897, at *3 (D.S.C. June 11, 2024) (collecting cases).

Bates's Amended Complaint does not specify which type of access claim she is asserting. Based on the facts alleged, however, the Court can infer that she is alleging a backward-looking access claim because the thrust of her claim is that Officer Coady's

previous conduct—in preparing a purportedly factually inaccurate police report that attributed fault for the collision to Bates—made it difficult for her to obtain counsel to pursue legal claims arising from the collision. (See Am. Compl. ¶¶ 44–48).

Here, Bates's access claim fails for three reasons. First, Bates's Amended Complaint fails to identify "precisely the underlying claim" she hoped to bring but could not because of the allegedly inaccurate police report prepared by Officer Coady. See Murdock, 2022 WL 17352171, at *5. Rather, she only vaguely alleges that she "experienced difficulty obtaining legal representation" to pursue "legal claims arising from the incident," (Am. Compl. ¶ 47), without identifying the type of legal claims she hoped to bring.

Second, even affording Bates's allegations the utmost liberal construction and assuming that she meant to allege that she "lost the opportunity to pursue a 'nonfrivolous,' [and] 'arguable' underlying" personal injury claim against Poole because the police report attributed fault to Bates, see Murdock, 2022 WL 17352171, at *4, that argument cannot stand factually because Bates has filed a lawsuit for personal injury claims arising out of the collision against Poole and her insurance company in this very District on the same day she filed her original Complaint in this action. See Compl., Bates v. Poole, No. JRR-26-286 (D.Md. Jan. 22, 2026) (ECF No. 1); see also Williams, 682 F.Supp.3d at 514 n.6 (dismissing a denial of access claim where plaintiff did subsequently file "a personal injury suit against the driver of the vehicle," and explaining that to determine whether the defendants' conduct denied plaintiff access to the courts requires analysis of whether the defendants' conduct deprived plaintiff of his "right to confront a witness, not whether it

inhibited [the plaintiff] from pursuing a subsequent civil action against the at-fault driver"); Huneycutt, 2024 WL 2932897, at *4 (dismissing access claim because plaintiff was "actively litigating" his claims in federal court); Hassuneh v. City of Minneapolis, 560 F.Supp.2d 764, 769 (D.Minn. 2008) (finding access claim meritless where the plaintiff brought a separate claim against the third party driver despite the "falsified" police report); Williams v. Savage, 538 F.Supp.2d 34, 42 (D.D.C. 2008) (finding no injury from an inaccurate police report because the plaintiff was "still able to meaningfully press his underlying claims" and as such, "is not presently denied an opportunity to . . . litigate").

Third, the police report does not deprive Bates of "adequate, effective, or meaningful access to the courts because" she "was personally involved in the incident," has "firsthand knowledge of all the facts and circumstances surrounding" the collision, and as such, is sufficiently equipped to challenge any factual inaccuracies in the police report, should they come up in her personal injury lawsuit against Poole. See Thompson v. Boggs, 33 F.3d 847, 852 (7th Cir. 1994) (holding that police officers who omitted information from police reports did not deny plaintiff access to the courts, since facts known to the plaintiff were sufficient to enable him to promptly file his lawsuit); Huneycutt, 2024 WL 2932897, at *4 (dismissing plaintiff's denial of access claim based on a false police report where plaintiff had personal knowledge of the incident to sufficiently litigate claims arising from the incident in state and federal court). For instance, Bates identifies Poole as the driver of the car that struck her and describes all the facts leading up to the collision "necessary to bring an action against" Poole, (see generally Am. Compl.), and it is clear from Defendants' Reply that Bates was "able to" bring such an action against Poole

"notwithstanding" Officer Coady's allegedly "inadequate investigation of the collision," see Hart v. City of Santee, No. 5:16-CV-03338-JMC, 2017 WL 3158779, at *7 (D.S.C. July 25, 2017).

Finally, Bates's alleged injury from the purportedly inaccurate police report—difficulty in finding legal representation for legal claims arising out of the collision, (Am. Compl. ¶ 47)—is not sufficient to state a denial of access claim, see Hart, 2017 WL 3158779, at *6 ("An allegation that the cover-up activity made . . . litigation more difficult . . . is not enough . . . to state a claim for unconstitutional denial of access to the courts . . . ."). Moreover, "[l]itigants in a civil action are not constitutionally entitled to counsel." See Banin v. Byerson, 620 F.App'x 166, 167 (4th Cir. 2015). Accordingly, the Court will grant Defendants' Motion to Dismiss Count II.

**3. Count III – Municipal Liability**

Finally, Bates brings a municipal liability claim ("Monell claim") against the City. (See Am. Compl. ¶¶ 49–55). Specifically, Bates alleges that the City "is responsible for establishing policies, procedures, and training" for FPD officers, and that "[u]pon information and belief, the City . . . failed to adequately train, supervise, or discipline officers regarding proper investigation of pedestrian collisions and the preparation of accurate police reports," thus creating a "foreseeable risk that officers would conduct incomplete or biased investigations and produce inaccurate reports regarding" such collisions. (Id. ¶¶ 51–53). Defendants respond that Bates's Monell claim should be dismissed because her Amended Complaint contains only "generalized assertions that" the City "failed to adequately train, supervise, or discipline" its officers which are unsupported

by factual content beyond "a single, isolated incident involving a single officer." (Reply at 7; Mot. Dismiss at 17–18).

Municipalities "may be held liable under § 1983 based on unconstitutional actions of individual defendants where those defendants were executing an official policy or custom of the local government that violated the plaintiff's rights." Bost v. Wexford Health Sources, Inc., No. ELH-15-3278, 2020 WL 1890506, at *10 (D.Md. Apr. 15, 2020) (quoting Monell v. Dep't of Soc. Servs. of City of N.Y.C., 436 U.S. 658, 690–91 (1978)). To allege a Monell claim, a plaintiff must put forth facts demonstrating that (1) "the municipality had an unconstitutional policy or custom; and (2) the unconstitutional policy or custom caused a violation of the plaintiff's constitutional rights." Id. (first citing Bd. of Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 403 (1967); and then citing Kurby v. City of Elizabeth City, 388 F.3d 440, 451 (4th Cir. 2004)). A "policy or custom" can exist in four ways:

> (1) through an express policy, such as written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

Cottman v. Balt. Police Dep't, No. SAG-21-837, 2022 WL 137735, at *5 (D.Md. Jan. 13, 2022) (quoting Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003)).

Here, Bates alleges a Monell claim based on the City's purported failure to (1) train, and (2) supervise or discipline officers. (Am. Compl. ¶ 52). The Court will address each Monell claim in turn.

**a. Failure to Train**

To state a Monell claim based on a failure to train theory, the plaintiff must allege facts that reveal: "(1) the nature of the training, (2) that the training was a 'deliberate or conscious' choice by the municipality, and (3) that the officer's conduct resulted from said training." McDowell v. Grimes, No. GLR-17-3200, 2018 WL 3756727, at *4 (D.Md. Aug. 7, 2018) (quoting Jones v. Chapman, No. ELH-14-2627, 2015 WL 4509871, at *18 (D.Md. July 24, 2015)). The City maintains that Bates's Monell claim fails because the Amended Complaint does not allege any facts regarding the nature of training received by FPD officers. (Mot. Dismiss at 17–19). The Court agrees.

The nature of the training element "requires more than bald assertions that police officers were not properly trained." McDowell, 2018 WL 3756727, at *4 (quoting Jones, 2015 WL 4509871, at *20). Merely alleging "in broad, conclusory terms and in a variety of different ways" that the City "failed to train and supervise its officers" is insufficient to state a failure-to-train claim. See id. (quoting Peters v. City of Mount Rainier, No. GJH-14-0955, 2014 WL 4855032 at *5 (D.Md. Sep. 29, 2014)). Rather, the plaintiff "must point out 'a specific deficiency' in training, 'rather than general laxness or ineffectiveness in training.'" Cottman, 2022 WL 137735, at *5 (quoting Spell v. McDaniel, 824 F.2d 1380, 1390 (4th Cir. 1987)).

Here, Bates does not identify specifically what about the City's training of FPD officers was lacking. Instead, she merely states that the City "failed to adequately train . . . officers regarding proper investigation of pedestrian collisions and the preparation of accurate police reports." (Am. Compl. ¶ 52). Rather than addressing any specific aspects

of the City's training program, such as identifying a particular training practice, see McDowell, 2018 WL 3756727, at *4, citing "specific [City] training materials that [she] claims inadequately address" pedestrian collision investigation and report-preparation procedures, see Cottman, 2022 WL 137735, at *9, or presenting any additional "concrete examples of [similar] misconduct" by FPD officers in investigating and preparing police reports regarding pedestrian collisions, see id., the Amended Complaint merely recites boilerplate allegations that the City should have more adequately trained its officers, (see Am. Compl. ¶¶ 52–54).[8] That, is insufficient to state a failure-to-train claim. Compare Hall v. Fabrizio, No. JKB-12-754, 2012 WL 2905293, at *2 (D.Md. July 13, 2012) (dismissing failure to train claim because the complaint did "not allege any facts regarding the sort of training that Baltimore police officers actually receive.") with, Est. of Bryant v. Balt. Police Dep't, No. ELH-19-384, 2020 WL 673571, at *39 (D.Md. Feb. 10, 2020) (denying the Baltimore Policy Department's ("BPD") motion to dismiss a failure to train claim where "[p]laintiffs identi[ied] a specific deficiency with BPD's training . . . [and] highlight[ed] eight instances" of alleged violations that "illustrate[d] th[e] training defendant").

Moreover, Bates's allegations regarding Officer Coady reveal—at most—"a single incident of misconduct by a police officer," which "is not sufficient to state a claim for inadequate training." See Brooks v. St. Charles Hotel Operating, LLC., No. DLB-23-208,

[8] Bates's Surreply also simply restates that "the City failed to adequately . . . [t]rain officers conducting pedestrian collision investigations," without offering any additional facts regarding the nature of the training provided by the City to FPD officers. (Proposed Surreply ¶ 76). As such, even accepting Bates's Surreply, the Court concludes that she still fails to state a failure-to-train claim.

2023 WL 6244612, at *11 (D.Md. Sep. 26, 2023) (citing Doe v. Broderick, 225 F.3d 440, 456 (4th Cir. 2000)). Accordingly, Bates has failed to state a failure-to-train claim.

**b. Failure to Supervise or Discipline**

To state a claim for Monell liability based on a failure to supervise or discipline theory, a plaintiff must allege:

> (1) that the supervisor had "actual or constructive knowledge" that a subordinate was engaged in conduct that "posed a pervasive and unreasonable risk of constitutional injury"; (2) that the supervisor's response to that knowledge "was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices"; and (3) an "affirmative causal link between the supervisor's inaction and the plaintiff's alleged constitutional injury."

Brown v. Bratton, No. ELH-19-1450, 2020 WL 886142, at *34 (D.Md. Feb. 21, 2020) (quoting Wilkins v. Montgomery, 751 F.3d 214, 226 (4th Cir. 2014)). To prevail on a failure to supervise or discipline theory, the plaintiff also must allege facts demonstrating "widespread conduct" by the municipality employees "that could support the inference that" the municipality's "policymakers were aware of and tacitly condoned" officers' misconduct. Id. at *34–35; Cottman, 2022 WL 137735, at *9 ("[F]ailure to supervise gives rise to municipal liability 'only in those situations in which there is a history of widespread abuse.'" (quoting Washington v. Balt. Police Dep't, 457 F.Supp.3d 520, 537 (D.Md. 2020))). "Sporadic or isolated violations . . . will not give rise to Monell liability . . . ." Owens v. Balt. City State's Att'ys Off., 767 F.3d 379, 403 (4th Cir. 2014).

Here, beyond a single conclusory allegation that the City "is responsible for establishing policies, procedures, and training for officers in the" FPD, (Am. Compl. ¶ 51),

the Amended Complaint is wholly devoid of facts showing "widespread misconduct" by FPD officers "that could support an inference" that the City knew, should have known, or "tacitly condoned" Officer Coady's purported conduct in investigating the collision and preparing the police report, see Brown, 2020 WL 886142, at *34. And even assuming that the City was aware of Officer Coady's conduct, such knowledge—at most—constitutes only an "isolated" instance of misconduct by a City employee that is insufficient to give rise to Monell liability.[9] See Owens, 767 F.3d at 403. Therefore, Bates has failed to a failure-to-supervise-or-discipline claim. Accordingly, the Court will grant the Motion as to Count III.

## III. CONCLUSION

For the foregoing reasons, the Court will grant Bates's Motion for Leave to File a Surreply (ECF No. 28) and Defendants' Motion to Dismiss (ECF No. 14), deny as moot Bates's Motion to Appear by Video (ECF No. 17) and Motion to Preserve Evidence and

[9] With respect to her failure to supervise or discipline claim, Bates's Surreply simply restates the vague and conclusory allegations from her Amended Complaint without alleging any facts from which this Court can infer that Officer Coady's conduct was part of a widespread practice at the FPD, of which the City was aware. (See Proposed Surreply at 9 ("[T]he City failed to adequately . . . [s]upervise investigative practices; [r]eview investigative reports for accuracy and completeness; [c]orrect investigative deficiencies; and [e]nsure that investigations were conducted in a fair and impartial manner.")). Therefore, notwithstanding Bates's Surreply, the Court concludes that she has failed to state a failure-to-supervise-or-discipline claim.

Notice of Prior Certified Requests (ECF No. 23), and dismiss Bates's Amended Complaint (ECF No. 16). A separate Order follows.

Entered this 25th day of September, 2026.

/s/
George L. Russell, III
Chief United States District Judge